IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

v.

JONATHON BROOKS JONES,

    Defendant.

Case No. 2:21-cr-00685-MIS

**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) BASED ON
EXTRAORDINARY AND COMPELLING REASONS**

**THIS MATTER** is before the Court on Defendant Jonathon Brooks Jones's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ECF No. 43, filed February 22, 2024. The Government filed a Response on April 8, 2024, ECF No. 46, to which Defendant filed a Reply on April 22, 2024, ECF No. 47. Upon review of the Parties' submissions, the record, and the relevant law, the Court will **DENY** the Motion.

    **I.**    **Background**

On May 18, 2021, Defendant pleaded guilty pursuant to a written Plea Agreement to possession with the intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). See Plea Agreement, ECF No. 18; Plea Minute Sheet, ECF No. 19. In the Plea Agreement, Defendant admitted the following:

> On February 19, 2021, I was the passenger in a vehicle that entered the United States Border Patrol checkpoint near Alamogordo, New Mexico. During the inspection at the checkpoint, agents found and seized approximately 676 gross grams of methamphetamine which I had hidden in my pants. I knew that the substance I had was methamphetamine, and I intended to distribute the methamphetamine to other individuals.

ECF No. 18 ¶ 8.  Agents also seized heroin, marijuana, and drug paraphernalia during the search of the vehicle.  Presentence Investigation Report ("PSR"), ECF No. 20 ¶ 10.  Defendant took ownership of all contraband and paraphernalia found on his person and in the vehicle.  Id.

Prior to sentencing, the United States Probation Office issued a Presentence Investigation Report revealing that Defendant had been subject to at least eight prior adult criminal prosecutions resulting in at least thirteen counts of conviction, id. ¶¶ 35-42, and finding that Defendant was subject to the career offender enhancement under United States Sentencing Guideline ("U.S.S.G.") 4B1.1(b)(1), id. ¶ 26.  However, Defendant received a three-level reduction for acceptance of responsibility, for a total offense level of 34.  Id. ¶¶ 27-29.  Based upon a total offense level of 34 and a criminal history category of VI, Defendant's guideline imprisonment range was 262 to 327 months, id. ¶ 95, with a mandatory minimum sentence of ten years pursuant to 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), id. ¶ 94.

On December 7, 2022, the Court entered Judgment, sentencing Defendant to the mandatory minimum 120 months' imprisonment, to be followed by five years' supervised release.  ECF No. 40 at 2-3.

On February 22, 2024, Defendant filed the instant Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) Based on Extraordinary and Compelling Reasons.  ECF No. 43.

According to the Bureau of Prisons' website, Defendant is currently incarcerated at FCI Sandstone and is scheduled to be released on July 3, 2029.

**II.     Legal Standard**

Title 18, United States Code, Section 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, contains the so-called "compassionate release" provision.  That statute provides, in relevant part:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—
>
> **(1)** in any case—
>
> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> **(i)** extraordinary and compelling reasons warrant such a reduction;
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) (2019).

The court may grant compassionate release (or otherwise reduce a sentence) pursuant to Section 3582(c)(1)(A)(i) only if the movant establishes all three of the following elements: (1) that "extraordinary and compelling reasons warrant such a reduction"; (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the applicable factors set forth in 18 U.S.C. § 3553(a) support a sentence reduction.  United States v. Maumau, 993 F.3d 821, 831 & n.4 (10th Cir. 2021); United States v. McGee, 992 F.3d 1035, 1042-43 (10th Cir. 2021).  A district court may deny compassionate release if any of these elements is lacking.

3

Maumau, 993 F.3d at 831 n.4; McGee, 992 F.3d at 1043.  "The moving defendant bears the burden of establishing that such a 'compassionate release' is warranted under the statute."  United States v. Moreno, 519 F. Supp. 3d 937, 941 (D. Kan. 2021).

Effective November 1, 2023, the United States Sentencing Commission revised U.S.S.G. § 1B1.13 "rendering the policy statement applicable and controlling the definition of 'extraordinary and compelling reasons' when a prisoner initiates a § 3582(c)(1)(A) proceeding." United States v. Mulder, Case No. 19-CR-0157-001-JFH, 2024 WL 382048, at *2 (N.D. Okla. Jan. 31, 2024).  Under U.S.S.G. § 1B1.13, the Court may reduce a term of imprisonment if:

>  **(1)(A)** Extraordinary and compelling reasons warrant the reduction; or
>
>  **(B)** The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
>  **(2)** The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
>  **(3)** The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13(a).  As relevant to this case, extraordinary and compelling reasons for a sentence reduction exist when the defendant's parent is incapacitated and "the defendant would be the only available caregiver for the parent."  U.S.S.G. § 1B1.13(b)(3)(C).

### III.   Discussion

Defendant requests that the Court reduce his sentence to time-served "because he is needed to serve as a caretaker for his 84-year-old mother who is struggling to care for herself due to progressing Parkinson's disease."  ECF No. 43 at 1.  He states that his mother "is no longer able to safely live independently[,]" "[s]he requires 24-hour assistance and there is no other friend or family member who is able to provide that assistance to her."  Id. at 4 (citing Aff. of Shirley Jane

4

Jones, ECF No. 43-1); see also id. at 3 (citing Letter from Dr. Jeffrey P. Nelson, ECF No. 43-2). He states that he has exhausted his administrative remedies, as the Warden of his institution denied his request to BOP for compassionate release. Id. at 5 (citing Inmate Request to Staff (Oct. 30, 2023), ECF No. 43-3; Inmate Request to Staff Response (Nov. 6, 2023), ECF No. 43-4). Defendant "recognizes that a first look at his criminal history may give the Court pause when considering his release[,]" id. at 12, but argues that his status as a career offender was driven largely by crimes that would not be prosecuted by the federal government today, id. at 14. In this regard, he appears to refer to his federal convictions in 2002 for conspiracy to distribute five grams or more of methamphetamine, distribution of five grams or more of methamphetamine, and aiding and abetting the distribution of less than fifty grams of methamphetamine, for which he was sentenced to eighty-four months' imprisonment to be followed by four years' supervised release. PSR ¶ 41. He argues that if he had not been deemed a career offender, his guideline imprisonment range would have been 121 to 151 months' imprisonment, reduced to 51 to 63 months' imprisonment "[w]hen we apply the eight-level departure recommended by the government[.]" Id. at 15. Defendant further argues that the 3553(a) factors support his release, id. at 15-21, and states that upon his release, he will live with his mother and "is prepared to complete any court-ordered substance abuse treatment to demonstrate to the Court that he is deserving of this opportunity[,]" id. at 22.

The Government concedes that Defendant has exhausted his administrative remedies, ECF No. 46 at 3-5, but argues that Defendant has failed to establish (1) extraordinary and compelling reasons for a sentence reduction or (2) that the Section 3553(a) factors weigh in favor of a sentence reduction, id. at 5-17. As to extraordinary and compelling reasons, the Government argues that Defendant has failed to establish that he is the only person available to care for his mother, as the

Motion admits that he has two adult siblings who live in New Mexico and Texas, respectively. Id. at 7-9. It argues that "[a]lthough such care would cause lifestyle changes for his siblings and might well necessitate that the defendant's mother move into one of her children's homes, such realities of life are not sufficient to make the defendant's release the only option for his mother's care." Id. at 7-8. As to the Section 3553(a) factors, the Government argues that the nature and circumstances of Defendant's drug-trafficking offense are serious and the Court sentenced him well-below the advisory guideline range, id. at 10; Defendant's lengthy criminal history shows that he "has little regard for the law and has shown himself to be unable or unwilling to comply with conditions of release imposed by the courts[,]" id. at 15; and his behavior while in BOP custody shows that he "continues to refuse to follow the rules imposed on him by society and by the Bureau of Prisons[,]" id. In this regard, the Government asserts that while housed at the Yankton prison camp in South Dakota, Defendant left the camp's grounds, entered his wife's vehicle, and threatened a BOP guard who attempted to stop Defendant from leaving the camp with his wife. Id. Thus, it argues that Defendant "has failed to demonstrate how a reduced sentence would reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public." Id. at 17 (citing 18 U.S.C. § 3553(a)(2)(A) – (C)).

In his Reply, Defendant argues that the Court should consider that the Sentencing Commission added the defendant's status as the only available caregiver for an incapacitated parent to the list of "extraordinary and compelling reasons" in order "to grant compassionate release to a greater number of inmates." ECF No. 47 at 2. He argues that the Court should not adopt the Government's narrow definition of the word "available," and that a sibling's family and work responsibilities are sufficient reasons to find that a sibling is unavailable as a caregiver. Id. at 3 (citing United States v. Nishida, CR. NO. 19-00025, 2023 WL 7222875, at *3 (D. Haw. Nov.

2, 2023)). Defendant further argues that granting him compassionate release will promote his rehabilitation because he currently has the support of his family, but that support may "deteriorate" if he is required to serve the rest of his sentence. Id. at 4. Defendant further maintains that because the Government today would not prosecute the crimes for which he was convicted in 2002, he would not have been sentenced to 84 months' imprisonment; he would have been prosecuted in state court and received a lighter sentence; it is unlikely the conviction would have qualified for any criminal history points; it would not have been considered a predicate felony for his career offender status; his guideline imprisonment range in this case would have been calculated based on only three criminal history points; his guideline imprisonment range would have been 51 to 63 months; and compassionate release after serving 38 months' imprisonment "would not be considered lenient[.]" Id. at 6. Finally, Defendant concedes that he violated prison rules at the Yankton prison camp by meeting with his wife but asserts that he did not seek to flee from officials when confronted. Id. at 7. He argues that the events at Yankton prison camp show that he "has people in his life who care about him," which will be important to his success if released from custody. Id. at 8.

Initially, the Parties agree, and the Court finds, that Defendant has satisfied the statutory exhaustion requirement. See ECF No. 43 at 5; ECF No. 46 at 3-5. Specifically, Defendant submitted a request for compassionate release to the Warden of FCI Sandstone on October 30, 2023, ECF No. 43-3, and the Warden denied the request on November 6, 2023, ECF No. 43-4. Although Defendant did not appeal the Warden's decision, more than thirty days lapsed between the date the Warden received the request and the date Defendant filed his Motion. Accordingly, the Court finds that Defendant has satisfied the exhaustion requirement. See United States v.

Muhammad, 16 F.4th 126, 130-31 (4th Cir. 2021); United States v. Garrett, 15 F.4th 335, 338 (5th Cir. 2021); United States v. Harris, 973 F.3d 170, 171 (3d Cir. 2020).[1]

However, assuming arguendo that Defendant has established (1) extraordinary and compelling reasons for a sentence reduction and (2) that a sentence reduction would be consistent with applicable policy statements issued by the Sentencing Commission, the Court finds that the 3553(a) factors do not support a sentence reduction. First, the nature and circumstances of Defendant's offense are serious. See 18 U.S.C. § 3553(a)(1). Defendant was convicted of possession with the intent to distribute 500 grams or more of methamphetamine, ECF No. 40, and admitted to possessing with the intent to distribute a not-insignificant 676 gross grams of methamphetamine,[2] ECF No. 18 ¶ 8. Defendant also took ownership of the heroin, marijuana, and drug paraphernalia that agents discovered during the search of the vehicle and his person. ECF No. 20 ¶ 10. The Court finds that the nature and circumstances of the offense, when considered together with the other 3553(a) factors, do not warrant compassionate release. See United States

---

[1] Where the warden denies a compassionate release request within thirty days of receipt, there is a split of authority as to whether the defendant is then required to exhaust the administrative appeals process, or whether he may file a Section 3582(c) motion after thirty days have lapsed from the warden's receipt of the original request without administratively appealing the warden's denial. Compare United States v. Muhammad, 16 F.4th 126, 130 (4th Cir. 2021) (concluding that the plain language of 18 U.S.C. § 3582(c)(1)(A) permits the defendant to file a motion in the district court after either fully exhausting his administrative rights to appeal or thirty days after the warden receives the original request, whichever is earlier); United States v. Garrett, 15 F.4th 335, 338 (5th Cir. 2021) (same); United States v. Harris, 973 F.3d 170, 171 (10th Cir. 2020) (same); with United States v. Olsson, Case No. 13-cr-2051 KWR, 2020 WL 6869979, at *1 (D.N.M. Nov. 23, 2020) ("[I]f the warden responds to a request within 30 days, defendant must fully exhaust available administrative appeals before filing a motion in district court."). The Tenth Circuit has apparently not addressed the issue, and the Government takes the position espoused in Muhammad, Garrett, and Harris—i.e., that if the warden denies a compassionate release request within thirty days of receipt, the defendant may file a Section 3582(c) motion in the district court after thirty days have lapsed from the warden's receipt of the original request without exhausting administrative appeals process. See ECF No. 46 at 4. The Court agrees with the Government and the Third, Fourth, and Fifth Circuits that the plain language of Section 3582(c)(1)(A) permits a defendant to file a motion for compassionate release with the district court after thirty days have lapsed from the warden's receipt of the administrative request, "whether the BOP has ruled on the request or not[.]" Garrett, 15 F.44th at 338.

[2] Although Defendant admitted in his Plea Agreement that "agents found and seized approximately 676 gross grams of methamphetamine which [he] had hidden in [his] pants[,]" ECF No. 18 ¶ 8, the PSR states that Defendant possessed with intent to distribute a total of 585.20 net grams of methamphetamine, ECF No. 20 ¶¶ 15, 20.

8

v. Mosely, __ F. Supp. 3d __, 2023 WL 8288984, at *2 (S.D. Tex. Nov. 4, 2023) (finding that the "seriousness" of the defendant's conviction for possessing and selling methamphetamine did not support compassionate release); United States v. Maldonado, Criminal Action No. 1:14-cr-338 (RDA), 2022 WL 7610270, at *5 (E.D. Va. Oct. 13, 2022) (finding that the nature and circumstances of the defendant's possession with the intent to distribute 907 grams of methamphetamine offense did not support compassionate release when considering that he committed the crime "while on parole for state narcotics offenses and after his prior convictions for possession, attempted robbery, possession of body armor as a violent felon, and attempting to sell a half pound of methamphetamine, all while on probation"); United States v. McCloy, Case Nos. 1:17-cr-00070-DN, 1:17-cr-00083-DN, 2022 WL 43868, at *3 (D. Utah Jan. 5, 2022) (finding that the "serious nature and circumstances of Defendant's offenses" did not support compassionate release where the defendant was convicted in two separate cases of possession of methamphetamine with intent to distribute involving a total of approximately 1,133 grams of methamphetamine).

Second, the Defendant's history and characteristics weigh heavily against a sentence reduction due to his lengthy criminal history and lack of respect for the rule of law. 18 U.S.C. § 3553(a)(1). On December 27, 1995, Defendant—then eighteen years' old—was arrested and later convicted in New Mexico state court of two counts of burglary and two counts of larceny over $250. ECF No. 20 ¶ 35. The Court initially deferred Defendant's sentence but later sentenced him to a total of six years' incarceration—all suspended—to be followed by five years' probation. Id. He later violated the terms of his probation, and his probation was revoked. Id.

On February 6, 1997, Defendant—then nineteen years' old, and apparently serving his suspended sentence for the burglary and larceny offenses described in the previous paragraph—

9

was arrested and later convicted in Arizona of shoplifting. Id. ¶ 36. During this offense, Defendant "became combative and was attempting to escape arrest." Id. The court ordered Defendant to pay a $265 fine. Id.

On December 26, 1997, Defendant—then twenty years' old, and apparently still serving the suspended sentence for the burglary and larceny offenses described above—was arrested and later convicted in New Mexico state court of resisting, evading, or obstructing an officer. Id. ¶ 37. During this offense, Defendant "ran out the back door, across the yard, and tried to jump a fence" when police officers arrived to serve a search warrant at the residence Defendant was in. Id. The court sentenced Defendant to 364 days' incarceration, a $1,000 fine, and court costs. Id.

On December 3, 2000, Defendant—then twenty-three years' old—was arrested and later convicted in Arizona of driving under the influence of alcohol. Id. ¶ 38. The court sentenced him to a total of ten days' incarceration, with nine days suspended upon completion of an alcohol treatment program. Id.

On October 9, 2001, Defendant—still twenty-three years' old—was arrested and later convicted in New Mexico state court of receiving stolen property over $250 (habitual offender) after detectives with the Hobbs Police Department were informed that Defendant was in possession of a computer and two radios that had been reported stolen by a business. Id. ¶ 39. An informant and an officer purchased the stolen computer from Defendant for $300. Id. The court sentenced Defendant to a total of two-and-a-half years' imprisonment, all suspended except for thirteen months' incarceration, followed by one year on parole. Id.

On December 8, 2001, Defendant—then twenty-four years' old—was arrested and later convicted in New Mexico state court of possession of a controlled substance after Defendant was found "in possession of a bottle of Euthanasia fluid that was reported missing from the Great Plains

Veterinary Clinic." Id. ¶ 40. The Euthanasia bottle contained 390 mg of Phenobarbital, which is listed as a Schedule IV controlled substance. Id. The court sentenced Defendant to 180 days' incarceration, suspended to 180 days' probation, plus a $1,000 fine (suspended) and court costs. Id. Defendant later violated his probation and was unsuccessfully discharged from probation. Id.

On August 26, 2002, Defendant—still twenty-four years' old—was arrested and later convicted in the United States District Court for the District of New Mexico of (1) conspiracy to distribute five grams or more of methamphetamine, its salts, isomers, or salts of its isomers in violation of 21 U.S.C. § 846; and (2) distribution of five grams or more of methamphetamine, its salts, isomers, or salts of its isomers in violation of 21 U.S.C.§§ 841(a)(1) & (b)(1)(B), and aiding and abetting that crime in violation of 18 U.S.C. § 2; and (3) distribution of less than 50 grams of a mixture and substance containing methamphetamine, its salts, isomers, or salts of its isomers, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C), and aiding and abetting that crime in violation of 18 U.S.C. § 2, Case No. 2:02-cr-01367-JEC. Id. ¶ 41; see also Case No. 2:02-cr-01367-JEC, Indictment (Doc. 1); Plea Agreement (Doc. 17); Judgment (Doc. 32). For these crimes, the Court sentenced Defendant to eighty-four months' imprisonment, to be followed by four years' supervised release. ECF No. 20 ¶ 41. Defendant commenced his term of supervised released on August 6, 2009. Id. He violated his supervision by being arrested on October 19, 2009, in Las Cruces, New Mexico, and charged with Possession with Intent to Distribute Cocaine in Case No. 2:10-cr-00101-RB. Id. Prior to this arrest, he tested positive for methamphetamine use on several occasions. Id. A warrant was issued on October 23, 2009, and was served on October 30, 2009. Id. On August 18, 2010, the Court revoked Defendant's supervised release and sentenced him to thirty-six months' incarceration, to run concurrently with the sentence imposed in Case No. 2:10-cr-00101-RB. Id.

As mentioned in the previous paragraph, on October 19, 2009, Defendant—then thirty-two years' old—was arrested and later convicted of possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B), and aiding and abetting that crime in violation of 18 U.S.C. § 2. Id. ¶ 42. See also Case No. 2:10-cr-00101-RB, Indictment (Doc. 9); Plea Agreement (Doc. 23); Judgment (Doc. 30). The Court sentenced Defendant to 105 months' incarceration, to be followed by four years' supervised release. ECF No. 20 ¶ 42. Defendant commenced his term of supervised release on June 2, 2017. Id. He violated his supervision by testing positive for methamphetamine use, attempting to obstruct a drug test, and failing to participate in substance abuse treatment. Id. On December 1, 2017, a warrant was issued and served. Id. The Court sentenced Defendant to 109 days' incarceration, to be followed by two years' supervised release. Id. On March 19, 2018, Defendant commenced his second term of supervised release. Id. He violated the terms of his supervised release by testing positive for methamphetamine use. Id. A warrant was issued on May 15, 2018, and served on May 17, 2018. Id. Additionally, it was discovered he was associating with a convicted felon who was on supervised release. Id. This occurred a second time after he was instructed to cease contact with this convicted felon. Id. On July 23, 2018, a warrant was issued and served. Id. The Court sentenced Defendant to eight months' incarceration with no supervised release to follow. Id.

The Court finds that Defendant's lengthy criminal history does not support compassionate release—especially considering that he has two prior federal convictions for controlled substance offenses. See United States v. Clark, Case No. 09-20119-08-JWL, 2021 WL 1140690, at *4 (D. Kan. Mar. 25, 2021) (finding that the defendant's "lengthy criminal history" weighed against compassionate release where the defendant was convicted of conspiracy to distribute and to

possess with intent to distribute more than 50 grams of methamphetamine and marijuana); United States v. Sanchez, CR No. 18-3052 KG, 2020 WL 7711911, at *4 (D.N.M. Dec. 29, 2020) (finding that the defendant's "lengthy criminal history" weighed against compassionate release where the defendant was convicted of four controlled substance offenses involving 464 grams of methamphetamine).

The Court further finds that Defendant's behavior in prison does not support compassionate release. The Government attached to its Response a Memorandum and an Incident Report from Defendant's previous penal institution, the Federal Prison Camp in Yankton, South Dakota ("FPC Yankton"). ECF Nos. 46-1, 46-2. According to the Government's Response, federal prison camps have the "lowest level of security at a BOP facility, in that [they] do not have fences and locks." ECF No. 46 at 15. According to the Memorandum, on May 29, 2023, a Case Manager monitoring inmate phone calls heard Defendant tell a caller that he "would be taking care of his area around 12:00PM." ECF No. 46-1. According to the Incident Report, the same day, May 29, 2023, at approximately 12:15 PM, Craig Powell, an off-duty safety administrator at FPC Yankton, was driving with his son in a car adjacent to the prison camp when he observed Defendant "enter the passenger side door of a White Chevy Malibu parked . . . along the north boundary of FPC Yankton." ECF No. 46-2. Powell observed Defendant "attempting to conceal himself by lowering himself in the seat." Id. Powell exited his vehicle, ordered Defendant to get on the ground, and called the police. Id. While he was giving the dispatcher instructions, Defendant told the driver of the vehicle, who Defendant identified as his wife, to leave. Id. At approximately 12:17 PM, the woman drove away while Powell was still on the phone with the Yankton Police Department. Id. After the woman drove away, Defendant "stood up to his feet, refused to get back on the ground and visibly became more hostile." Id. Defendant then said to Powell: "go ahead and say something

13

stupid I[']m going to beat your ass in front of your boy." Id. Defendant was then escorted away by two officers who had arrived on the scene. Id. The Court finds that this serious incident does not support compassionate release. See United States v. Allen, 819 F. App'x 418, 418-20 (6th Cir. 2020) (affirming denial of motion for compassionate release on the grounds that the 3553(a) factors did not support a reduction in sentence due to, inter alia, "the circumstances of [the defendant's] only prison disciplinary violation[,]" which involved attempting to use another person's urine to pass a drug test).

The Court further finds that under the circumstances of this case, a reduction of Defendant's 120-month sentence is not warranted when considering the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct. 18 U.S.C. § 3553(a)(2)(A) – (C). Defendant's 120-month sentence was the mandatory minimum, ECF No. 20 ¶ 94, and more than 142-months (almost fourteen years) below the bottom of his guideline range, id. ¶ 95. Assuming that Defendant has been incarcerated since his initial arrest on February 19, 2021, see Docket Text associated with 02/19/2021, and that he has received credit for all of that time, Defendant has served just over three years of his sentence. The Court finds that granting Defendant's Motion after serving less than one-third of his sentence "would do little to 'promote respect for the law' or 'provide just punishment for the offense.'" United States v. Daugerdas, 613 F. Supp. 3d 807, 812 (S.D.N.Y. 2020) (citing 18 U.S.C. § 3553(a)(2)(A)). See also United States v. Mata-Soto, 861 F. App'x 251, 256 (10th Cir. 2021) (affirming denial of motion for compassionate release and finding that the district court did not abuse its discretion in finding that reducing the defendant's sentence to time served "would not reflect the gravity of the offense or the need both for deterrence and to protect the public" where the defendant was convicted of conspiring to distribute and possess with

14

intent to distribute 50 grams or more of methamphetamine, the district court sentenced him within the guidelines to life imprisonment, and the defendant had served twelve years of that sentence); United States v. Cambiano, Case No. 17-20038-07-DDC, 2023 WL 7129879, at *5-6 (D. Kan. Oct. 30, 2023) (finding that a reduction of the defendant's below-guideline 135-month sentence for conspiracy to distribute and possess with intent to distribute more than 50 grams of methamphetamine "would not comport with the nature and circumstances of his offense . . . [or] adequately promote respect for our laws or provide just punishment for the offense"); United States v. Gutierrez, Case No. 17-cr-20007-04-JAR, 2022 WL 2528082, at *4 (D. Kan. July 7, 2022) (finding that reducing the defendant's 260-month sentence to time-served would not "provide adequate deterrence or appropriate punishment" for the defendant's conspiracy to possess with intent to distribute and distribution of 50 grams or more of methamphetamine offense where the defendant had served more than half of the sentence); United States v. Meraz-Leyva, Case No. 15-10152-02-JWB, 2021 WL 2255036, at *2 (D. Kan. June 3, 2021) (finding that reducing the defendant's 120-month sentence for possession with intent to distribute 50 grams or more of methamphetamine after serving only 68 months "would not reflect the seriousness of his criminal conduct, nor would it furnish adequate deterrence to criminal conduct or provide just punishment" and that "the imposed 120-month sentence remains sufficient, but not greater than necessary, to meet the sentencing factors in § 3553(a) and punish the offense"); United States v. Lovelace, No. CR 15-4112 RB, 2020 WL 4201845, at *5 (D.N.M. July 22, 2020) (finding that the defendant's 144-month sentence for, inter alia, conspiracy to possess with intent to distribute 500 grams or more of methamphetamine, "reflects the gravity of her 30-year methamphetamine habit that evolved into drug trafficking"); United States v. Machuca-Quiintana, 465 F. Supp. 3d 1178, 1184 (D. Kan. 2020) (finding that a reduction of the defendant's 144-month sentence for distribution of

methamphetamine greater than 50 grams, imposed less than a year prior to the motion for compassionate release, was not warranted).

The Court finds that a reduction in sentence is not merited when considering all of the applicable 3553(a) factors. See Meraz-Leyva, 2021 WL 2255036, at *2 (finding that the 3553(a) factors did not support compassionate release of defendant who pled guilty to one count of possession with intent to distribute 50 grams or more of methamphetamine, was responsible for 651.3 grams of methamphetamine, and had served 68 months of his 120-month sentence because, inter alia, the defendant "along with others, were involved in trafficking of methamphetamine, which is a danger to the community" and he received a sentence at the low end of the guideline range).

### IV.  Conclusion

Accordingly, it is **HEREBY ORDERED** that Defendant Jonathon Brooks Jones's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ECF No. 43, is **DENIED**.

*[signature: Margaret Strickland]*

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE